UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BOARDS OF TRUSTEES OF THE
OHIO LABORERS BENEFITS,

      Plaintiffs,

      v.

RISING SON COMPANY, INC.,

      Defendant.

Case No. 2:25-cv-48

JUDGE DOUGLAS R. COLE
Magistrate Judge Jolson

## OPINION AND ORDER

Plaintiffs, Boards of Trustees of the Ohio Laborers Benefits, are the fiduciaries

of four employee benefits plans and one labor-management cooperative trust. The five

plans are known collectively as Ohio Laborers Benefits,[1] and they operate pursuant

to various Collective Bargaining Agreements (CBAs) with Defendant to effectuate the

benefits plans. (Compl., Doc. 1, #2). Defendant Rising Son Company, Inc., is an Ohio

corporation, and an employer for the purposes of this suit. (*Id.* at #2–3). Rising Son

allegedly has failed to comply with the CBA's requirements since January 1, 2022.

(*Id.* at #3). So Plaintiffs sued. But Rising Son never appeared to defend itself. As a

result, Plaintiffs sought and received an entry of default from the Clerk's Office.

---

[1] The benefits plans that constitute Ohio Laborers Benefits are (1) the Ohio Laborers' District Council–Ohio Contractors' Association Insurance Fund; (2) the Laborers' District Council and Contractors' Pension Fund of Ohio; (3) the Ohio Laborers' Annuity Fund; (4) the Ohio Laborers' Training and Apprenticeship Trust Fund, and (5) Ohio Laborers District Council–Ohio Contractors' Association Cooperation and Education Trust. (Doc. 1, #2).

(Docs. 7, 8). They now move the Court for entry of default judgment. (Doc. 15). The Court held a hearing on that motion and has since received additional evidence. (Doc. 17). For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion for Default Judgment (Doc. 15), and enters judgment in the amount of $42,235.84.

## BACKGROUND[2]

Plaintiffs, Boards of Trustees of the Ohio Laborers Benefits, serve as the fiduciaries for the four employee benefits plans and one labor-management cooperative trust at issue in this case. (Doc. 1, #2). Defendant, Rising Son Company, Inc., is an Ohio corporation that employs individuals covered by those benefit plans. (*Id.*). Defendant Rising Son is a signatory to numerous agreements, namely, Laborers' Local 1216 Building Agreement, the Ohio Highway-Heavy-Municipal-Utility State Construction Agreement, and the National Distribution Agreement. (*Id.* at #3; *see* Docs. 15-2, 15-3, 15-4).

These agreements "obligated the Defendant to file monthly contribution reports, permit audits of its financial records, and make hourly contributions to the Plans and the LIUNA Tri-Funds on behalf of all persons as defined in the Agreements." (Decl. of Brian Gaston, Doc. 15-1, #237). Because Rising Son employs individuals covered by these agreements, it is required to "pay contributions at specified rates on behalf of its employees for each hour worked in covered

---

[2] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *See In re Cook*, 342 B.R. 384, 2006 WL 908600, at *3 (B.A.P. 6th Cir. Apr. 3, 2006) (Table). Accordingly, the Court's summary of the factual background rests on the allegations in Plaintiffs' Complaint (Doc. 1) and the Plaintiffs' Motion for Default (Doc. 15).

employment." (*Id.*). These contributions "[a]re due on the 15th day of the month following the month in which" the covered employee performed the work. (*Id.*). As the fiduciaries of the plans, Plaintiffs are authorized to "conduct an audit of financial records, collect delinquent contributions, and assess and collect liquidated damages" when "employers ... fail to timely remit required contributions and deductions." (*Id.*).

According to the Plaintiffs' records and an audit they conducted pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), they determined that Rising Son failed to comply with the terms of the agreements by failing "to make timely contributions for the Plans for some months between January 2022 through March 2025." (*Id.* at #238). According to Plaintiffs, Rising Son "has refused to permit Plaintiffs' auditors access to Defendant's financial records from January 1, 2022, through current," and has also failed to pay delinquencies resulting from the missing contributions. (Doc. 1, #3). Plaintiffs allege that, as of January 20, 2025, Rising Son "has not made payment ... and [has] not paid known delinquent contributions, damages, and interest." (*Id.* at #4).

Seeking to address these delinquencies and obtain access to Rising Son's financial records, Plaintiffs brought this suit on January 20, 2025. (*See id.*). Plaintiffs assert three claims for relief based on Rising Son's failure to abide by the agreements: (1) a claim under the Labor Management Relations Act (LMRA) for violations of the Collective Bargaining Agreements and damages for "failure to remit timely payment on the delinquent contributions and deductions ... liquidated damages ... and interest," (*id.* (citing 29 U.S.C. § 185)); (2) a claim under ERISA for violations of the

3

Collective Bargaining Agreements, seeking "access to the Defendant's financial records ... unpaid contributions as a result of the audit, interests and penalties due" and costs pursuant to 29 U.S.C. § 1132(g), (*id.* at #4–5 (citing 29 U.S.C. § 1145)); and (3) a claim for injunctive relief based on the ERISA violations, which asks this Court (a) to order Defendant "to provide Plaintiffs access to … financial records," (b) to order Defendant "to submit monthly contribution reports," (c) to enjoin the Defendant "from further breaching the terms of the governing documents ... and violating ERISA," and (d) to enforce the CBA, (*id.* at #5).

Rising Son, despite being validly served, (*see* Doc. 3), never answered or responded to Plaintiffs' complaint, nor did an attorney ever appear on its behalf. On March 18, 2025, Magistrate Judge Jolson issued a Notation Order requiring Plaintiffs to file a status report following Rising Son's failure to timely file an answer by February 24, 2025. (Doc. 4). In that Status Report, Plaintiffs reported that Rising Son had "produced most of the documents requested for the audit," but that a few remained outstanding. (Doc. 5, #15). They asked the Court for leave until April 17, 2025, to "apply for default or [file a] notice [of] dismissal," (*id.*), which the Court granted, (3/20/25 Not. Order).

On April 17, 2025, Plaintiffs chose the former course, applying to the Clerk for an entry of default against Rising Son. (Doc. 7). The Clerk entered default against the Defendant five days later. (Doc. 8). But Plaintiffs never followed that up with a motion for default judgment. So, on July 25, 2025, the Magistrate Judge ordered them to either do so or explain why they needed more time. (Doc. 10). In response, the

4

Plaintiffs explained that they were exploring settlement with Rising Son in hopes of avoiding the "unnecessary expenses associated with default judgment proceedings." (Doc. 11, #25). Ultimately, though, on September 8, 2025, Plaintiffs moved for default judgment against Rising Son. (Doc. 15). In that motion, Plaintiffs sought $40,095.77, comprised of monetary damages, interest, attorney's fees, and court costs. (*Id.* at #7–8).

Because the Court did not entirely understand the basis for the amount Plaintiffs request, the Court held a hearing. At the hearing, Plaintiffs clarified certain aspects of their request, and also modified the request in two ways: (1) they are now requesting simple interest instead of compound interest (the latter of which is what they sought in the earlier motion), and (2) they have updated the interest through June 2, 2026. The newly requested amount is $42,235.84. Since then, Plaintiffs have also filed an updated affidavit clarifying certain aspects of their requested damages. (Doc. 17).

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021); *see also* Fed. R. Civ. P. 8(b)(6) ("An

allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must confirm that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (Table) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Stated differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (citation omitted).

Assuming the court has jurisdiction and the plaintiff has presented a plausible claim, the court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (citation omitted). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures

6

contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up). Here, as noted, the Court held a hearing.

## LAW AND ANALYSIS

To begin, the Court concludes that Plaintiffs have satisfied Federal Rule of Civil Procedure 55(a)'s requirement for a default. Rising Son failed to plead or otherwise defend this action despite Plaintiffs serving it on February 5, 2025. (Doc. 3). In their Motion for Default Judgment, Plaintiffs now seek damages for breach of the CBAs pursuant to the LMRA and ERISA, as well as for costs and attorney's fees for service of the Complaint. For the reasons explained below, the Court concludes that the Board is entitled to default judgment under Rule 55(b)(2) and grants judgment on the breach of contract claim under the CBAs consistent with the LMRA and ERISA.

## A.     The Court Has Jurisdiction Over This Matter.

Plaintiffs have no trouble establishing jurisdiction. Begin with subject-matter jurisdiction. Plaintiffs assert claims under LMRA and ERISA—both federal laws. (Doc. 1, #4–5). The Court therefore has federal question jurisdiction over those claims. *See* 28 U.S.C. § 1331.

The Complaint's now-admitted factual allegations also demonstrate personal jurisdiction. *Harbold v. Smash Restro & Bar, LLC*, No. 5:22-cv-1583, 2023 WL 4085309, at *2 (N.D. Ohio June 20, 2023) ("Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments."). Rising Son is an

7

Ohio corporation and has its principal place of business here. (Doc. 1, #2). Thus, Defendant is "at home" in Ohio and subject to this Court's personal jurisdiction. *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 768 (N.D. Ohio 2019) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

## B.     The Board Sufficiently Alleges Claims Under the LMRA and ERISA.

With jurisdiction out of the way, turn to the merits. Plaintiffs here advance claims under both the LMRA and ERISA. Under the latter statute, an employer subject to a "collectively bargained agreement" violates ERISA if they fail to "make [required] contributions in accordance with the terms and conditions of ... such agreement." 29 U.S.C. § 1145; *see Iron Workers Dist. Council of S. Ohio & Vicinity Benefit Tr. v. ALW Constr. LLC*, No. 3:18-cv-114, 2019 WL 4170211, at *2 (S.D. Ohio Sep. 3, 2019). Further, trustees who represent benefit plans for union employees "are empowered to sue employers in federal court to enforce the terms of contractual agreements when employers are not timely paying into the benefit plan on behalf of their employees." *Bds. of Trs. of Ohio Laborers Benefits v. Cole Burton Contractors, LLC*, No. 2:23-cv-1626, 2024 WL 4452274, at *2 (S.D. Ohio Oct. 9, 2024) (first citing 29 U.S.C. § 1145; and then citing *Laborers Health & Welfare Tr. Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 546 (1988)).

Here, Plaintiffs' Complaint alleges that Rising Son, as an employer, executed the CBAs, making it "bound to the Agreements and Declarations of Trust establishing the Ohio Laborers Benefits and the LIUNA Tri-Funds by virtue of executing the CBAs." (Doc. 1, #3). Those Agreements and Declarations required Rising Son "to file

8

monthly contribution reports, permit audits of its financial records, and make hourly contributions to the Ohio Laborers Benefits on behalf of all persons as defined in the aforesaid CBAs." (*Id.*). Additionally, these CBAs further authorized the Plaintiffs to "conduct an audit of financial records, collect delinquent contributions, and assess and collect liquidated damages and interest where an employer like Defendant fails to remit required contributions and deductions." (*Id.*). Plaintiffs allege that Rising Son nonetheless "has refused to permit Plaintiffs' auditors access to Defendant's financial records [since] January 1, 2022," and "have refused to pay known delinquencies." (*Id.*). In other words, Rising Son failed to make contributions in accordance with the plans' terms, violating ERISA. So Plaintiffs sufficiently allege this claim.

Likewise, failing to make contributions to the funds consistent with the agreements "may state a claim for breach of contract between an employer and a labor organization … hearable under [the] LMRA." *Bds. of Trs. of Ohio Laborers Benefits v. Crowe Constr. Inc.*, No. 2:24-cv-3039, 2025 WL 2579485, at *3 (S.D. Ohio Sep. 5, 2025) (citing 29 U.S.C. § 185(a)). Under the LMRA, similar to ERISA, "[e]mployers violate 29 U.S.C. § 185 by breaching agreed upon conditions in a collective bargaining agreement." *Bds. of Trs. of Ohio Laborers* Benefits, 2024 WL 4452274, at *2 (citing *Bds. of Trs. of Ohio Laborers Benefits v. Rock River Constr. Ltd.*, No. 2:22-cv-2806, 2023 WL 5938764 (S.D. Ohio Aug. 11, 2023)). Based on these allegations, the Court finds that the Complaint states a valid claim for relief under the LMRA.

9

**C.      The Board is Entitled to Damages and Costs for the Breach of the CBAs Under the LMRA and ERISA Violation.**

Finally, consider damages. Under Federal Rule of Civil Procedure 55(b), the Court "may conduct hearings" to "determine the amount of damages." However, "if damages are calculable or liquidated, then the court may forego [sic] an evidentiary hearing because the facts establishing damages are not distinct from the facts establishing liability." *Bds. Of Trs. Of Ohio Laborers Benefits*, 2025 WL 2579485, at *4 (first citing *United States v. Di Mucci*, 879 F.2d 1488, 1497–98 (7th Cir. 1989); and then citing *Barnes v. Abraham, Inc.*, No. 2:17-cv-279, 2017 WL 5714091, at *2 (S.D. Ohio Nov. 28, 2017) ("A court may determine damages without holding an evidentiary hearing if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." (internal quotation marks omitted))).

Here, Plaintiffs seek monetary damages in the form of: (1) the delinquent contributions, (2) liquidated damages, (3) interest owed as a result of the delinquent contributions, and (4) reasonable attorneys' fees. (Doc. 1, #6). Plaintiffs calculated their proposed damages based on an ERISA audit. Therefore, the damages "are sufficiently certain and calculable." *Bds. of Trs. of Ohio*, 2025 WL 2579485, at *4; (Doc. 15, #230; Doc. 15-1). Thus, one might have imagined that the Court would be able to calculate damages based upon the documents Plaintiffs submitted, without the need for a hearing. But alas, that was not the case, as the Court could not entirely follow the materials that Plaintiffs actually submitted. So the Court elected to hold a hearing to supplement the information, which it did on June 15, 2026. (*See* 6/15/26

10

Min. Entry). At that hearing, the Plaintiffs explained their understanding of various aspects of the plan language. Beyond that, it turned out that there were some mistakes on the schedule that Plaintiffs had provided. The combination of those two explained at least part of the Court's inability to tie that schedule to the damages amount Plaintiffs requested. Plaintiffs have since rectified those mistakes, though, and have submitted a new affidavit attaching a new schedule. (*See* Doc. 17). This one, the Court can follow.

Under 29 U.S.C. § 1132(g)(2), where a "fiduciary" is awarded judgment consistent with applicable law, the "court shall award the plan—"

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of–

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Court addresses each below.

### 1.    Unpaid Contributions.

Based on the ERISA audit, Plaintiffs calculate that between January 2022 and March 2025, Rising Son's unpaid contributions to the fund total $25,603.88. (Doc. 15-1, #238; Doc. 17-1, #431 (attaching fund memo)). This amount is presented by way of

11

an affidavit, and the Court sees no reason to question its accuracy. So Plaintiffs are entitled to that amount.

### 2. Liquidated Damages and Interest.

The plans' governing documents also provide for "liquidated damages of ten percent (10%) plus one percent (1%) for each month the Contractor is delinquent." (*See, e.g.*, Doc. 15-2, #273 (L1216 Building Agreement)). The Court had originally understood that language to mean that liquidated damages under the plans includes an interest component, such that the liquidated damages for a delinquent contribution continue to grow each month the contribution is late. At the hearing, though, Plaintiffs' counsel explained the way the Plaintiffs have long enforced that language—the liquidated damages refers only to the ten percent payment, itself. The one percent per month interest is not additional liquidated damages, but is rather a reference to the interest that accrues under the plan. As that interpretation reduces the amount due to Plaintiffs under the plans (as opposed to one in which liquidated damages accrues each month), the Court will credit their interpretation.

Applying that methodology, the liquidated damages is ten percent of each unpaid or late paid contribution amount. Those amounts are listed under the column labeled "Damages" on the chart that Plaintiffs provided. And the Court confirms that the numbers there in fact reflect ten percent of the unpaid contribution amounts. They total $3,642.47. (Doc. 17-1, #431). So that is the amount the Court awards for liquidated damages.

Then there is the matter of interest, which Plaintiffs originally calculated as $3,910.94, through the date the motion was filed. (Doc. 15-1, #238). At the hearing, though, it came out that this number is flawed in two ways. First, the Plaintiffs had calculated the one percent per month as compound interest. That is, each subsequent month included interest not only on the unpaid contribution, but also on any then-accrued interest. Plaintiffs explained that another court in this district has held that the plans instead provide for simple interest. Rather than ask this Court to consider that contract interpretation issue anew, the Plaintiffs explained that they now seek only simple interest. Second, the interest needs to be updated to reflect that it has been some months since Plaintiffs moved for default judgment. Plaintiffs provided the Court a new chart at the hearing (and also filed it on the docket, *see* Doc. 17-1) that reflects both of those changes.[3] And the Court has confirmed the accuracy of the computations. Accordingly, the interest is $6,171.97.

Then there is one more issue. Under 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to interest plus *the greater of* (1) interest, or (2) liquidated damages. That is, the Plaintiffs get the greater of (1) two times interest, or (2) interest plus liquidated damages. Algebraically, of course, any time that interest is greater than liquidated

---

[3] The chart actually presented at the hearing was Doc. 16. But that chart had another problem. For some of the unpaid amounts, they were merely paid late. But the chart did not reflect when payment occurred. Interest, of course, stops accruing once payment is made. Plaintiffs represented that the Interest column on the chart correctly calculated interest based on when payment actually occurred, even though the chart did not reflect the payment date. Out of an abundance of caution, though, the Court asked them to prepare a new chart reflecting the late payment dates so the Court could confirm that interest amounts. That is what Plaintiffs filed as Doc. 17-1, and that is what the Court relied on to double-check the interest calculation.

damages (as is the case here) two times interest would be greater than the sum of interest plus liquidated damages. So Plaintiffs are entitled to the former, but they request the latter. At the hearing, the Court inquired as to why, and Plaintiffs responded that it is their practice only to seek the sum of the two, even when two times interest would be more. So, as Plaintiffs seek the lower amount, that is what the Court will award. As a result, Plaintiffs are entitled to interest in the amount of $6,171.97 and liquidated damages in the amount of $3,642.47 as full satisfaction of the amounts due under 29 U.S.C. § 1132(g)(2)(B)–(C).

### 3. Attorney's Fees and Court Costs.

ERISA also entitles the plaintiff to "reasonable attorney's fees and costs." 29 U.S.C. § 1132(g)(2)(D). To determine the appropriate amount of attorney's fees, the Sixth Circuit relies on the "lodestar" approach "mandated by the Supreme Court." *Building Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)). Under this standard, "the most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (cleaned up) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Further, "[t]here is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Id.* (citation omitted). Attorney for Plaintiffs, Ryan K. Hymore, worked on this matter for 9 hours at a rate of $350.00 per hour ($3,150.00). (Doc. 15, #423). Daniel T. Sponaugle, a paralegal at Hymore's firm, expended 24.9 hours of work on this matter at an hourly rate of $180.00

14

($4,482.00). (*Id.* at #423–425). But Plaintiffs seek only $6,258.24 in attorney's fees, which represents 82% of that lodestar amount of $7,632.00.[4] (*Id.* at #425). While they do not explain why they elect not to seek the full amount, the Court finds the requested attorney's fees to be reasonable in terms of both rates and hours expended, as reflected in similar work that Hymore has done for other clients. (*See id.* at #423–24). Plaintiffs also seek $559.28 in costs—$405 for the filing fee, $19.28 for attempted certified mail service, and $135 for personal service through a process server. (*Id.* at #425). The Court finds those costs reasonable as well.

### 4. Total Damages.

Based on the above, the Court awards $25,603.88 in unpaid contributions to the fund, $6,171.97 in interest, $3,642.47 in liquidated damages, $6,258.24 in attorney's fees, and $559.28 in court costs, for a total default judgment of $42,235.84.[5]

### CONCLUSION

For the reasons explained above, the Court **GRANTS** Plaintiffs' Motion for Default Judgment (Doc. 15) and directs the Clerk to **ENTER JUDGMENT** in the amount of $42,235.84. Defendant Rising Son Company, Inc., is liable to the Plaintiffs for this amount. The Court further directs the Clerk to **TERMINATE** this matter on the Court's docket.

---

[4] While Plaintiffs' updated chart lists an updated attorney's fees amount of $7,571.28, (Doc. 17-1, #431), the declaration accompanying it clarifies that they are sticking to the amount originally requested in the Motion for Default Judgment, (Doc. 17, #430).

[5] Plaintiffs did not seek any recovery under 29 U.S.C. § 1132(g)(2)(E) for "such other legal or equitable relief as the court deems appropriate."

SO ORDERED.

June 29, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

16